UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                        :

DIEGO CARMONA DEL POZO,       :
                        :

              Plaintiff,    :

                        :

      - against -       :

                        :

BELLEVUE HOSPITAL CENTER,    :

                        :

           Defendant.   :
------------------------------------------------------ X
SHIRA A. SCHEINDLIN, U.S.D.J.:

**OPINION AND ORDER**

09 Civ. 4729 (SAS) (DF)

## I.    INTRODUCTION

        Diego Carmona Del Pozo ("Plaintiff" or "Del Pozo"), proceeding pro se, brings this action against Bellevue Hospital Center ("Defendant" or "Bellevue") alleging race and national origin discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[1] Defendant now moves for summary judgment on the following grounds: (1) Bellevue is not a suable entity; (2) Plaintiff cannot establish a prima facie case that Defendant discriminated against him on the basis of race and/or national origin; (3) Plaintiff cannot establish a prima facie case that Defendant retaliated against him; and (4) even if Plaintiff

---

[1] See Plaintiff's Complaint ("Compl."), Ex. A to Declaration of Assistant Corporation Counsel Rebecca Rachel Hirschklau ("Hirschklau Decl."), at 1-3.

could establish a prima facie case of discrimination and/or retaliation, he cannot

rebut, as pretextual, Bellevue's stated non-discriminatory reason underlying the

adverse employment action in issue.[2]  Plaintiff opposes Defendant's motion and

seeks leave to amend his complaint.  For the reasons stated below, Del Pozo's

motion for leave to amend his complaint is denied and Bellevue's motion for

summary judgment is granted.

## II.  BACKGROUND

Bellevue is a facility owned and operated by the New York City

Health and Hospitals Corporation ("HHC").  On July 30, 2007, Del Pozo, an

Hispanic male from the Dominican Republic, was employed by the HHC as a

provisional Watch Person at Bellevue.[3]  Bellevue's security staff must adhere to

strict uniform regulations.[4]  Nothing may be worn on a uniform other than what is

specified in the Hospital Security Uniform Regulations.[5]  During his employment,

---

[2]     *See* Memorandum of Law in Support of Defendant's Motion for
Summary Judgment ("Def. Mem.") at 1-2.

[3]     *See id.* at 1.

[4]     *See* Bellevue Hospital Security Uniform Regulations ("Bellevue
Regs."), Ex. C to Memorandum of Law in Opposition to Defendant's Motion for
Summary Judgment ("Pl. Mem."), at 8-12.

[5]     *See id.* at 9-10.

Del Pozo wore a pin on his uniform that displayed the Dominican flag.[6] Captain

Eugene Hatchett, Plaintiff's supervisor, advised him to remove the pin on three

separate occasions.[7] On the first occasion, Del Pozo removed the pin while in the

presence of Hatchett, then put it back on once Hatchett left.[8] The second time

Hatchett saw Plaintiff wearing the pin, he filed a complaint with Sergeant Gregory

Jones.[9] Jones then informed Plaintiff that he could not wear the pin on his

uniform.[10] The third time Hatchett saw Plaintiff wearing the pin, Hatchett warned

him that if the pin was not removed, he would be written up, taken to the Labor

Relations Department for disciplinary action, and possibly terminated.[11] In June

2008, Del Pozo went to Human Resources and asked if there was a policy

prohibiting him from representing his background by wearing a pin on his

uniform.[12] Plaintiff filed a complaint with Human Resources in which he reported

---

[6]     *See* 7/19/10 Deposition of Plaintiff ("Pl. Dep."), Ex. I to Pl. Mem., at
41.

[7]     *See id.*

[8]     *See id.*

[9]     *See id.*

[10]    *See id.*

[11]    *See id.*

[12]    *See id.* at 41-42.

3

that Hatchett instructed him to remove the pin three times.[13]  He was referred by Human Resources to Christopher Roberson, the South Manhattan Network Compliance Officer.[14]  Plaintiff reported to Roberson that Hatchett instructed him to remove the pin.[15]  Three days later, Roberson informed Del Pozo that Bellevue's security uniform policy prohibits him from wearing the pin.[16]  After Del Pozo met with Roberson, the Assistant Director of Bellevue Hospital Police, Eddie D. Diaz, told Plaintiff that he was not permitted to wear the pin on his uniform.[17]  Del Pozo agreed not to wear it.[18]  Within ten days of meeting with Human Resources, Plaintiff discovered urine in and around his locker in the Bellevue Police locker room on three occasions.[19]  He did not file a complaint following any of these instances.[20]

On October 25, 2008, a homeless man was brought into Bellevue's

---

[13]    *See id.* at 42.

[14]    *See* Plaintiff's 11/22/10 Letter to the Court, Ex. G to Hirschklau Decl., at 1.

[15]    *See id.*

[16]    *See id.*

[17]    *See id.*

[18]    *See* Pl. Dep. at 42.

[19]    *See* Pl. Mem. at 6.

[20]    *See* Pl. Dep. at 119.

4

Acute Emergency Services for a psychiatric evaluation.[21]  The patient exhibited

violent and disorderly behavior while attempting to leave and had to be physically

restrained by several members of Bellevue staff.[22]  Del Pozo was accused of

repeatedly punching the patient in the face while assisting in the restraint.[23]  On

October 29, 2008, Captain George Ortega was tasked with investigating the alleged

assault.[24]  Ortega compiled written statements from Bellevue Police who were on

duty when the patient was being restrained.[25]  Based on these written statements, he

conducted personal interviews with three witnesses who claimed that Plaintiff had

in fact assaulted the patient.[26]  Ortega found that the statements of these

eyewitnesses were accurate, clear, concise, and consistent.[27]  As a result of this

investigation, Ortega concluded that Plaintiff committed an act of workplace

violence and thereby violated Bellevue's Code of Ethics and Mission Statement.[28]

---

[21]    *See* 11/4/08 Bellevue Hospital Police Investigative Follow Up Report ("11/4/08 Bellevue Rpt."), Ex. D to Hirschklau Decl., at 1.

[22]    *See* Def. Mem. at 7.

[23]    *See id.* at 7-8.

[24]    *See id.* at 8.

[25]    *See id.*

[26]    *See id.*

[27]    *See* 11/4/08 Bellevue Rpt. at 2.

[28]    *See* Def. Mem. at 8.

Ortega recommended that some course of action be taken against Plaintiff for discrediting the Hospital Police Department.[29]  Diaz approved Ortega's report and requested that internal disciplinary action be taken against Del Pozo.[30]  On November 7, 2008, Bellevue terminated Plaintiff's employment.[31]

Del Pozo filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in December 2008.[32]  He received a Notice of Right to Sue Letter from the EEOC on March 27, 2009.[33]  On May 22, 2009, Del Pozo filed the instant action.

## III.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[34]  "An issue of fact is genuine if

---

[29]  *See id.*

[30]  *See id.* at 8-9.

[31]  *See id.* at 9.

[32]  *See* Compl. at 3.

[33]  *See id.* at 4.

[34]  Fed. R. Civ. P. 56(c).

6

'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under the governing law.'"[35] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[36] In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim."[37] To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[38] and it "'may not rely on conclusory allegations or

---

[35]     *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[36]     *Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). *Accord Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

[37]     *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). *Accord In re September 11 Litig.*, 500 F. Supp. 2d 356, 361 (S.D.N.Y. 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation marks and citations omitted).

[38]     *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

7

unsubstantiated speculation.'"[39]  However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[40]

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[41]  However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[42]  Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[43]  A court will hold the submissions of a pro se party "'to less stringent standards than formal pleadings drafted by lawyers .

---

[39]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[40]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[41]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[42]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[43]     *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

8

. . .'"[44] District courts should "read the pleadings of a pro se plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'"[45] These same principles apply to briefs and opposition papers submitted by pro se litigants.[46] Nonetheless, proceeding pro se "does not otherwise relieve a litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."[47]

### B.    Summary Judgment and Employment Discrimination

"'[T]he salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation.'"[48] "Courts within the Second Circuit have not hesitated to grant defendants summary judgment in such cases where . . .

---

[44]     *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)).

[45]     *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[46]     *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *Burgos*, 14 F.3d at 790.

[47]     *Cole v. Artuz*, No. 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

[48]     *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

9

plaintiff has offered little or no evidence of discrimination."[49]  Indeed, "'[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.'"[50]  However, greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue and circumstantial evidence may reveal an inference of discrimination.[51]  This is so because "'[e]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law.'"[52]  But "'[e]ven in the discrimination context, a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment.'"[53]  "'[M]ere conclusory allegations, speculation

---

[49]     *Alphonse v. State of Connecticut Dep't of Admin. Servs.*, No. Civ.3:02CV1195, 2004 WL 904076, at *7 (D. Conn. Apr. 21, 2004) (internal quotation marks and citation omitted).

[50]     *Feingold v. New* York, 366 F.3d 138, 149 (2d Cir. 2004) (quoting *Abdu-Brisson*, 239 F.3d at 466) (alteration in original).

[51]     *See id.*

[52]     *Sadki v. SUNY Coll. at Brockport*, 310 F. Supp. 2d 506, 515 (W.D.N.Y. 2004) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999) (internal quotation marks and citation omitted, brackets in original)).

[53]     *Flakowicz v. Raffi Custom Photo Lab, Inc.*, No. 02 Civ. 9558, 2004 WL 2049220, at *8 (S.D.N.Y. Sept. 13, 2004) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

or conjecture will not avail a party resisting summary judgment.'"[54]

## C.   Leave to Amend

Subsequent to being served with a responsive pleading, a party may amend its pleading "only with the opposing party's written consent or the court's leave."[55] "Leave to file an amended complaint 'shall be freely given when justice so requires'"[56] "and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility."[57] Where a motion for leave to file an amended complaint is made in response to a motion for summary judgment, and the parties have briefed the issue of whether the proposed amended complaint could raise a genuine issue of fact, "the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates

---

[54] *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003) (quoting *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996) (alteration in original)). *Accord Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("'[P]urely conclusory allegations of discrimination, absent any concrete particulars,' are insufficient" to satisfy an employee's burden on a motion for summary judgment.) (quoting *Meiri*, 759 F.2d at 998) (alteration in original).

[55] Fed. R. Civ. P. 15(a)(2).

[56] *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (quoting Fed. R. Civ. P. 15(a)).

[57] *Id.* (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

11

no triable issue of fact . . . ."[58]

## IV.   APPLICABLE LAW

### A.   Discrimination

Title VII proscribes discrimination against or termination of an

individual on the basis of "race, color, religion, sex, or national origin."[59]  "To

withstand a motion for summary judgment, a discrimination plaintiff must

withstand the three-part burden-shifting [analysis] laid out by *McDonnell Douglas*

*Corp. v. Green*."[60]  Under this framework a plaintiff must first establish a prima

facie case of discrimination based on his race, color, religion, sex, or national

origin.[61]  To establish a prima facie case of discrimination, a plaintiff must show:

"(1) he is a member of a protected class; (2) he was qualified for the position he

held; (3) he suffered an adverse employment action; and (4) the adverse action

took place under circumstances giving rise to [an] inference of discrimination"

---

[58]    *Id.* (citing *Azurite Corp. v. Amster & Co.*, 844 F. Supp. 929, 939 (S.D.N.Y. 1994) (denying plaintiff leave to amend complaint where proposed amendment "would be futile because the factual foundations of [its] new allegations are insufficient, as a matter of law, to withstand defendants' motion for summary judgment")).

[59]    42 U.S.C. § 2000e-2.

[60]    *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[61]    *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010).

based on his membership in the protected class.[62]  An adverse employment action

is an action in which a plaintiff has suffered a materially adverse change in his

employment status or in the terms and conditions of his employment.[63]  Examples

of adverse employment actions include "a termination of employment, a demotion

evidenced by a decrease in wage or salary, a less distinguished title, a material loss

of benefits, [and] significantly diminished material responsibilities."[64]  Title VII,

however, does not set forth a general civility code for the workplace.[65]  If the

plaintiff succeeds in establishing a prima facie case, then the burden shifts to the

employer to articulate a non-discriminatory reason for the adverse employment

action.[66]  Finally, if the employer articulates a non-discriminatory reason for the

challenged action, the burden shifts back to the plaintiff to demonstrate that the

defendant's explanation was pretextual.[67]

### B.   Retaliation

---------------------

[62]   *Id.* at 492.

[63]   *See Kessler*, 461 F.3d at 207.

[64]   *Id.* (quotation marks and citation omitted).

[65]   *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010).

[66]   *See Ruiz*, 609 F.3d at 492.

[67]   *See id.*

13

"Title VII also makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . in an investigation, proceeding, or hearing under this subchapter.'"[68]  In order to establish a prima facie case of retaliation, the plaintiff must show: (1) that he participated in an activity protected by Title VII; (2) that his participation was known to his employer; (3) that his employer thereafter subjected him to a materially adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse employment action.[69]  An adverse employment action in the context of a retaliation claim is an action sufficiently severe to dissuade a reasonable worker from making or supporting a discrimination charge.[70]  "Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous;' anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'"[71]  Thus, co-

---

[68]     *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010) (quoting 42 U.S.C. § 2000e-3(a)).

[69]     *See id.*

[70]     *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

[71]     *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington N.*, 548 U.S. at 67).

worker harassment can constitute adverse employment action for purposes of establishing a prima facie case of retaliation, but only if sufficiently severe and only if the employer knew about (or reasonably should have known about) the harassment and failed to take appropriate remedial action.[72]  Proof of causation can be demonstrated either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."[73]

The three-step *McDonnell Douglas* burden-shifting analysis also applies to retaliation claims.[74]  "At the summary judgment stage, if the plaintiff presents at least a minimal amount of evidence to support the elements of the claim, the burden of production shifts to the defendant to proffer a legitimate non-

---

[72]     *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (citing *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1265 (10th Cir. 1998) (holding that employer will be liable for harassment inflicted by the victim's co-workers if (1) supervisory or management personnel knew about and acquiesced in or condoned the retaliatory harassment by the plaintiff's co-workers, or (2) supervisory or management personnel orchestrated the campaign of co-worker harassment)).

[73]     *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (citing *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)).

[74]     *See Kaytor*, 609 F.3d at 552.

retaliatory reason for the adverse employment action."[75] "If the employer produces such evidence, the employee must, in order to avoid summary judgment, point to evidence sufficient to permit an inference that the employer's proffered non-retaliatory reason is pretextual and that retaliation was a 'substantial reason for the adverse employment action.'"[76]

Where an employer claims that an employee was terminated because of his own misconduct, appropriate inquiries include whether the employer had a good faith reason to believe that the employee engaged in misconduct and whether the alleged misconduct was, in fact, the reason for the employee's termination.[77] An employer is entitled to summary judgment even if the investigation into the alleged misconduct was inadequate and the employee was disciplined based upon a hastily formed conclusion, so long as the employer was not motivated by discriminatory animus.[78] In the absence of evidence undermining the employer's

---

[75]     *Id.* at 552-53.

[76]     *Id.* at 553 (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).

[77]     *See Maturine v. American Int'l Group, Inc.*, No. 04 Civ. 9064, 2006 WL 2347806, at *4 (S.D.N.Y. Aug. 14, 2006).

[78]     *See Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 112 (S.D.N.Y. 2009) (citing *Jordan v. Olsten Corp.*, 111 F. Supp. 2d 227, 236 (W.D.N.Y. 2000) (employer entitled to summary judgment even if it "conducted a shoddy investigation" and "subsequently made a poorly informed decision to fire"

assertion that it believed in good faith that plaintiff's conduct merited discipline and termination, or any other evidence of pretext or discriminatory intent, the employer is entitled to summary judgment.[79]  Therefore, to defeat summary judgment, a plaintiff must raise a material issue of disputed fact as to whether a reasonable jury could conclude, by a preponderance of the evidence, that the decision to terminate him was based, at least in part, on a retaliatory or discriminatory motive.[80]

## V.   DISCUSSION

### A.   Race and National Origin Discrimination Claim

Defendant asserts that Del Pozo cannot establish a prima facie case of discrimination against him on the basis of race and/or national origin.[81]  It is undisputed that Plaintiff is a member of a protected class and that he was qualified for the position he held.  Furthermore, his termination was an adverse employment

---

the plaintiff, so long as there was no evidence that discriminatory animus motivated the employer to investigate plaintiff and terminate his employment)).

[79]     *See id.* at 111 (citing *Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2004)).

[80]     *See id.* at 107.

[81]     *See* Def. Mem. at 1.

17

action.[82]  However, Del Pozo fails to demonstrate that the adverse employment

action occurred under circumstances giving rise to an inference of discrimination

based on his membership in the protected class.  Del Pozo attempts to satisfy this

element by alleging that Bellevue unfairly disciplined him for wearing a pin that

displayed the Dominican flag during the course of his employment while allowing

other officers to wear pins that represented their nationality.[83]  Plaintiff concludes

that such disparate treatment raises a reasonable inference that his employment was

terminated due to his national origin and race.

Aside from being told to remove the pin, Plaintiff was not otherwise

disciplined for wearing the pin.[84]  He was told to remove the pin on more than one

occasion and threatened with disciplinary action when he did not comply.[85]

Plaintiff was eventually informed by his superior that wearing the pin was against

---

[82]      Del Pozo's additional allegations — that he was forced to remove a
pin that represented his nationality, that Captain Hatchett referred to him outside
his presence in a derogatory manner, and that his locker was sprayed with urine —
do not constitute adverse employment actions as they are not materially adverse
changes in his employment status or in the terms and conditions of his
employment. *See Burlington N.*, 548 U.S. at 61 ("Title VII's substantive
antidiscrimination provision protects an individual only from employment-related
discrimination.").

[83]      *See* Def. Mem. at 5.

[84]      *See* Pl. Dep. at 41.

[85]      *See id.*

18

Bellevue's policy.[86]  Furthermore, the only flag that Bellevue's Security Uniform

Regulations permit officers to wear on their uniforms is the American flag.[87]

Bellevue was merely enforcing a general policy, not subjecting Plaintiff to

disparate treatment, when it informed Del Pozo that he could not wear the

Dominican flag on his uniform.  Consequently, Del Pozo has failed to offer any

evidence that raises a reasonable inference that his employment was terminated due

to his race and national origin.  He therefore cannot establish a prima facie case of

race and/or national origin discrimination.

Assuming, *arguendo*, that Plaintiff could establish a prima facie case

of discrimination, he has not shown that Bellevue's proffered non-discriminatory

reason for his termination is pretextual.  Defendant explains that Plaintiff was

terminated because the allegation that he assaulted a patient in October 2008 was

substantiated.  As a result of a report of an assault on a patient, Captain Ortega

conducted an investigation in which he interviewed Officer Slade, Officer Beverly,

and Watch Person Powell.[88]  Slade stated that on the day in question, she

responded to a call for additional officers at the ambulance bay, where a patient

---

[86]     *See id.*

[87]     *See* Bellevue Regs. at 4.

[88]     *See* Def. Mem. at 8.

19

was placed face down on a stretcher due to his mental status.[89]  According to Slade,

"[t]he patient became increasingly agitated, combative, and disruptive, spitting in

an upward direction."[90]  A four point restraint application was initiated by the nurse

on duty during which time Slade and fellow officers assisted in restraining the

patient with the use of restraint straps.[91]  Slade stated that while the patient

attempted to break free from the restraints, Plaintiff "hit the patient three times in

the facial area with a closed fist."[92]  Similarly, Beverly stated in his interview that

while the officers tried to restrain the patient, he "elevated his head and upper body

from the stretcher and made a gesture as if he was going to spit, but no saliva was

ejected from his mouth."[93]  Del Pozo responded "by striking the male patient four

times with a closed fist."[94]  Lastly, Powell stated that while the patient was being

restrained on the stretcher, he raised his head and made gestures as if he was going

to spit, but Powell never saw saliva come out of his mouth.[95]  Plaintiff then

---

[89]    *See* 11/4/08 Bellevue Rpt. at 1.

[90]    *Id.*

[91]    *See id.*

[92]    *Id.*

[93]    *Id.*

[94]    *Id.*

[95]    *See id.* at 2.

"delivered a series of punches to the patient's face."[96]  Captain Ortega concluded

from his investigation that Slade, Beverly, and Powell's statements were accurate,

clear, concise, and consistent.[97]  He recommended that the Hospital Police

Administration "take some course of action against [Del Pozo] for disgracing and

discrediting" the Security Department.[98]

Del Pozo argues that he did not engage in the alleged misconduct for

which he was disciplined.  However, he offers no evidence that Defendant did not

believe that he had engaged in conduct warranting discipline or that Defendant

treated similarly situated employees accused of similar misconduct more leniently.

Del Pozo challenges the reliability of the evidence, claiming that Slade, Beverly,

and Powell's statements "do not correspond with one another's written testimony,"

specifically with respect to the number of times he hit the patient and whether or

not the patient spit at him.[99]  He argues that given the disagreement about the

circumstances regarding the incident that led to Plaintiff's termination,[100] "there is

---

[96]     *Id.*

[97]     *See id.*

[98]     *Id.*

[99]     Def. Mem. at 8.

[100]    *Id.*

21

a genuine dispute as to a material fact that should be determined by a jury."[101]

However, this Court is "not interested in the truth of the allegations against

[P]laintiff" but "in what 'motivated the employer.'"[102]  Because the issue is not

whether Defendant's investigation reached a correct conclusion, Del Pozo's

assertion that he did not engage in the alleged conduct, even if true, cannot defeat

summary judgment.[103]  Although Del Pozo speculates that the employees who

reported the alleged assault were motivated by discriminatory intent, he offers no

evidence in support of this allegation.  Consequently, Del Pozo cannot show that

Defendant's proffered reason for terminating his employment is pretextual.  In

sum, Del Pozo has offered no evidence from which a jury could find that

Defendant's decision to terminate his employment was even partially motivated by

discriminatory animus.[104]

### B.    Retaliation Claim

Plaintiff asserts that he suffered an adverse employment action in

---

[101]    *Id.* at 9.

[102]    *McPherson*, 457 F.3d at 216 (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

[103]    *See Kolesnikow*, 622 F. Supp. 2d at 112 (citing *Baur v. Rosenberg, Minc, Falkoff & Wolff*, No. 07 Civ. 8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008)).

[104]    *See* Def. Mem. at 7.

retaliation for the two complaints he filed with Human Resources.  The first complaint was filed in September 2008 and concerned compensation Del Pozo had not received for sick leave he took subsequent to being exposed to blood at Bellevue.[105]  The second complaint to which Del Pozo refers is his meeting with Human Resources in June 2008 in which he discussed his supervisor's order to remove the Dominican flag pin.[106]  Plaintiff claims that he met with Human Resources in June 2008 to complain about his supervisor's insistence that he remove a Dominican flag pin from his uniform, behavior which Plaintiff believed was discriminatory.[107]  Whether Del Pozo met with Human Resources in June 2008 to complain about discriminatory conduct or to challenge his supervisor's "attempt to enforce the hospital police uniform policy," as Defendant alleges, is irrelevant.[108]  Assuming Del Pozo's meeting with Human Resources was protected activity under Title VII, there was no causal connection between the adverse employment action — Del Pozo's termination in November 2008 — and his June 2008 meeting.

---

[105]    *See* Pl. Dep. at 126-127.  Plaintiff's complaint concerning sick leave does not qualify as protected activity under Title VII as it does not allege discrimination on the basis of national origin or race.  *See Kaur v. New York City Health and Hosps. Corp.*, 688 F. Supp. 2d 317, 336 (S.D.N.Y. 2010).

[106]    *See* Pl. Dep. at 126.

[107]    *See* Pl. Mem. at 4.

[108]    Def. Mem. at 12.

23

Plaintiff offers no direct evidence of retaliatory animus directed at him by Defendant.  Furthermore, the temporal proximity between Defendant's knowledge of Plaintiff's protected activity and his termination is insufficient to establish causation.  There is no bright line rule that defines "the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."[109]  However, "cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"[110]  Courts in this Circuit have held that periods "of two months or more defeat an inference of causation."[111]  There is a five month lapse between Plaintiff's protected activity

---

[109]    *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001).

[110]    *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

[111]    *Ragin v. East Ramapo Cent. Sch. Dist.*, No. 05 Civ. 6496, 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010).  *Accord Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85 (2d Cir. 1990) (three month lapse between protected activity and adverse act was insufficient to establish a causal connection); *Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 0962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (same for two-and-a-half month lapse); *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005) ("Three months is on the outer edge of what courts in this circuit recognize as

and his termination.  This Court concludes that the temporal proximity between Plaintiff's protected activity and subsequent termination is insufficient to establish causation.  Consequently, Del Pozo has not demonstrated a causal connection between his protected activity and his termination because "there is no direct evidence of retaliatory animus by the decision-makers who engaged in the adverse employment action[], there is no evidence of disparate treatment," and the temporal proximity between his protected activity and the adverse employment action "is too attenuated."[112]  Assuming that Plaintiff could establish a prima face case of retaliation, Defendant has offered a non-retaliatory reason for his termination, namely, his assault of a patient.[113]  Plaintiff has not demonstrated why this reason should be rejected as mere pretext.[114]

Del Pozo also alleges other acts of retaliation unrelated to his employment, which may qualify as adverse retaliatory actions under *Burlington*. In particular, Del Pozo alleges that Captain Hatchett stated "Fuck Carmona"

---

sufficiently proximate to admit of an inference of causation"); *Wayne v. Principi*, No. 01 Civ. 941, 2004 WL 389009, at *13 (S.D.N.Y. Mar. 3, 2004) (three month period between protected activity and adverse act was insufficient to establish a causal connection); *Carr v. WestLB Admin., Inc.*, 171 F. Supp. 2d 302, 309-10 (S.D.N.Y. 2001) (same for four month lapse).

[112]    *Ragin*, 2010 WL 1326779, at *24.

[113]    *See supra* Part IV.A.

[114]    *See id.*

outside of his presence on three or four occasions,[115] and that his locker was sprayed with urine three times.[116] "While [Hatchett's] alleged comments may be rude and derogatory, Title VII is not a 'general civility code'"[117] nor does it protect employees against "a few isolated incidents of 'boorish or offensive use of language,' particularly when heard 'second hand . . . .'"[118] Furthermore, the locker room incidents are not actionable for a different reason. Plaintiff does not identify the person(s) who sprayed urine on his locker. Thus, there can be no employer responsibility as there is no evidence that: (1) the perpetrator of the harassment was Plaintiff's supervisor;[119] or (2) Bellevue knew about the harassment and failed to stop it.[120] There is simply no evidence that Bellevue orchestrated, acquiesced in, condoned, or encouraged the retaliatory harassment.[121] After Plaintiff found urine

---

[115] *See* Pl. Dep. at 93.

[116] *See id.* at 120.

[117] *Bickerstaff*, 196 F.3d at 452 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

[118] *Wright v. Eastman Kodak Co.*, 550 F. Supp. 2d 371, 379 (2d Cir. 2008) (quoting *Benette v. Cinemark U.S.A., Inc.*, 295 F. Supp. 2d 243, 251-52 (W.D.N.Y. 2003)).

[119] *See Kaytor,* 609 F.3d at 546.

[120] *See Richardson*, 180 F.3d at 446.

[121] *See id.* (citing *Gunnell*, 152 F.3d at 1265).

in his locker on the first occasion, he refused to file a complaint and commence an investigation when Sergeant Berrios offered to do so.  On the following two occasions, Plaintiff did not notify any of his superiors.  This begs the question of whether these retaliatory acts are "sufficiently severe or pervasive to be actionable under Title VII . . . ."[122]  In any event, they cannot be attributed to Bellevue under the circumstances.  Accordingly, none of the retaliatory acts alleged by Plaintiff—whether related to employment or not—can support a prima facie case of retaliation.

## C.    Leave to Amend the Complaint Is Denied

Bellevue asserts that summary judgment must be granted in its favor because it "is not a suable entity."[123]  Bellevue argues that "[a]s a facility owned and operated by HHC, it may not be sued in its individual capacity."[124]  Pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, the capacity to sue and be sued is determined by "the law of the state where the court is located."[125]  Governmental agencies possess only those powers which are conferred expressly or by necessary

---

[122]   *Benette*, 295 F. Supp. 2d at 251.

[123]   Def. Mem. at 2.

[124]   *Id.*

[125]   Fed. R. Civ. P. 17(b).

implication.[126]  While HHC has been granted the capacity to be sued under state law,[127] the City of New York has neither expressly stated, nor necessarily implied, that Bellevue can be sued in its individual capacity.[128]  Plaintiff argues that this was remedied by his motion to amend his Complaint in which he requests "leave to change the defendant's name from 'Bellevue Hospital' to 'New York City Health and Hospitals Corporation.'"[129]  Plaintiff's proposed Amended Complaint does nothing more than change the name of the defendant.  While this may cure the suable entity problem, it does not remedy any of the deficiencies in Plaintiff's case discussed in this Opinion.  Thus, Plaintiff's proposed Amended Complaint could not withstand Defendant's motion for summary judgment for the reasons stated above.[130]  Accordingly, Del Pozo's motion for leave to amend his Complaint is denied on the ground that the proposed amendment would be futile.

## VI.    CONCLUSION

---

[126]    *See Yonkers Comm'n on Human Rights v. City of Yonkers*, 654 F. Supp. 544, 551 (S.D.N.Y. 1987).

[127]    *See* N.Y. Unconsol. L. § 7385(1).

[128]    *See Ayala v. Bellevue Hosp.*, No. 94 Civ. 1551, 1999 WL 637235, at *3 (S.D.N.Y. Aug. 20, 1999).  *See also Nogbou v. Mayrose*, No. 07 Civ. 3763, 2009 WL 3334805, at *7 (S.D.N.Y. Oct. 15, 2009).

[129]    Pl. Mem. at 2.

[130]    *See supra* Parts IV.A & B.

For the foregoing reasons, Bellevue's motion for summary judgment is granted and Del Pozo's motion for leave to amend his Complaint is denied. The Clerk of the Court is directed to close the instant motions [docket # 18 and # 25 ] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 2, 2011

29

**-Appearances-**

**Plaintiff (Pro Se):**

Diego Carmona Del Pozo
2015 Bruckner Boulevard
Apt #3D
Bronx, NY 10427
(646) 500-3395

**For Defendant:**

Rebecca Rachel Hirschklau
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-0759

30